IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**REGINALD SNELLING,**                    Case Number 1:16 CV 212

Petitioner,                    Judge Benita Y. Pearson

v.                    REPORT AND RECOMMENDATION

**TERRY TIBBALS, Warden**

Respondent.                    Magistrate Judge James R. Knepp II

## INTRODUCTION

This cause is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) for findings of

fact, conclusions of law, and recommendations. Reginald Snelling, a *pro se* Ohio prisoner, has filed

a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Warden Terry

Tibbals, filed a motion to dismiss (Doc. 11) and Petitioner opposed (Doc. 18). Following review,

and for the reasons stated below, the undersigned recommends the Petition be dismissed.

## BACKGROUND

In June 2010, a jury convicted Snelling of one count of abduction in violation of Ohio Rev.

Code § 2905.02(A)(1), two counts of failure to comply with order or signal of police officer in

violation of Ohio Rev. Code § 2921.331(B)(4) and (5), and one count of assault on a peace officer

in violation of Ohio Rev. Code § 2903.13(A). (Doc. 11–1, at 9).

On June 15, 2010, the trial court merged the two counts of failure to comply with the order

or signal of a police officer and gave Snelling an aggregated sentence of seven years of

imprisonment. (Doc. 11–1, at 12). The sentence was amended on July 7, 2010, to reflect the revised

code and degree of felony. (Doc. 11–1, at 14).

## FACTS

The Ohio Court of Appeals summarized the facts of the case as follows:

{¶ 1} Appellant, Reginald Snelling, appeals a judgment of the Richland County Common Pleas Court convicting him of abduction (R.C. 2905.02(A)(1)), two counts of failure to comply with order or signal of a police officer (R.C. 2921.331(B)(4), R.C. 2921.331(B)(5)(a)(ii)), and assault on a police officer (R.C. 2903.13(A)). Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶ 2} Reaunna Dodd met appellant in October or November of 2009, and became involved in a romantic relationship with him. Shortly thereafter, Dodd and her 4–year–old son moved in with appellant.

{¶ 3} By the end of 2009, Dodd decided to end her relationship with appellant because he was possessive and controlling. During the week between Christmas and New Year's Eve, Dodd left the home, over appellant's protests, to visit a friend. Realizing this was her chance to get away from appellant, Dodd chose to stay at her friend's home instead of returning to live with appellant.

{¶ 4} When appellant [sic] decided to stay with her friend, she left all of her belongings at appellant's house. After several attempts to call appellant to retrieve her belongings, she finally reached him on December 31, 2009. He told her that she could come to the house to get her things. However, when she arrived, he told her that he would drive her to where her things were stored. Dodd was nervous about getting into the truck with appellant, but called her mom on her cell phone so someone would know of her whereabouts.

{¶ 5} After Dodd got into appellant's truck, he drove around aimlessly for several hours. He took her to Kroger's, but pulled out of the parking lot without stopping when she told her mother where they were located. He then drove to Walmart and once again did not stop. He drove on to State Route 30 and headed toward Ashland.

{¶ 6} Dodd became afraid when appellant left Mansfield. She repeatedly asked appellant to let her out of the truck, but he refused. Dodd continued to relay information to her mother about her whereabouts because her mother and brother were trying to follow them in a car. However, appellant became angry when Dodd told her mother where they were going and told her that every time she told her mother what direction they were heading, he would go a different way.

{¶ 7} Appellant eventually exited Route 30 and began driving down a deserted country road. Dodd was afraid appellant was going to kill her. Appellant continued

2

to refuse to allow Dodd to get out of the truck. Appellant turned around and got back on Route 30, but instead of taking Dodd back to Mansfield he headed south on Interstate 71. At one point he told Dodd he was taking her to Indiana. At another time he told her he was going to run into a semi and kill them both.

{¶ 8} Appellant exited I–71 at State Route 13 and Hanley Road in Mansfield. He was forced to stop at a stop sign because there was a car in front of him. As he slowed down, Dodd attempted to jump out of the truck. Appellant attempted to stop her by hitting the lock button on her door, but she unlocked the door from her side of the truck. Appellant tried to grab the back of her jacket and pull her back inside the truck, but Dodd slipped out of her jacket and ran.

{¶ 9} Dodd ran toward a house, but appellant drove down the driveway of the home and reached the house first. She then ran back toward the road. Appellant got out of the truck and chased her on foot. Dodd ran into the road and stopped a PT Cruiser with two older ladies inside. Appellant followed. She screamed at the ladies to help her, but they drove away.

{¶ 10} Dodd began running through a field and appellant got back into his truck to chase her. Dodd ran back to the road and stopped another vehicle. The driver of the vehicle got out and called the police. Appellant had stopped his truck in the middle of the road and was standing by the driver's side door. Dodd's mother and brother arrived on the scene. When her brother ran toward appellant, appellant got back in the truck and left.

{¶ 11} Mansfield Police Officer Ryan Anschutz was traveling on Lexington Avenue in Mansfield when he spotted appellant. He activated his lights and sirens and turned to pursue appellant. Appellant drove erratically, swerving into oncoming traffic to pass other vehicles and speeding. When appellant attempted to make an abrupt right turn at a high rate of speed, he lost control of his truck, which came to rest in the front yard of a residence.

{¶ 12} Appellant jumped out of the truck and ran through several back yards. He was pursued by Anschutz, who saw appellant throw a box cutter to the ground. Anschutz eventually was able to tackle appellant. Appellant struck the officer several times during attempts to restrain him. After appellant was secured in handcuffs, police found a police scanner radio in his jacket pocket. The box cutter was retrieved from the path of his pursuit.

{¶ 13} Appellant was indicted by the Richland County Grand Jury with abduction, two counts of failure to comply with the order or signal of a police officer, and assault on a peace officer. Following jury trial he was convicted as charged on all counts. He was sentenced to four years incarceration for abduction and 12 months for assault. The court merged the failure to comply convictions and sentenced him

to two years incarceration on Count II.

*State v. Snelling*, No. 10CA94, 2011 WL 2565606, at *1–2 (Ohio Ct. App. June 22, 2011).

Snelling, who was represented by counsel, filed a timely notice of appeal from the trial court's judgment. (Doc. 11–1, at 16). He then filed an amended notice of appeal on July 23, 2010. (Doc. 11–1, at 17). On September 22, 2010, the Ohio Court of Appeals dismissed the case for want of prosecution. (Doc. 11–1, at 21). On the same day, Snelling filed a motion to supplement the record and a brief. (Doc. 11–1, at 22–23)

Snelling then filed a motion to reopen his appeal. (Doc. 11–1, at 35). The court of appeals granted the motion to reopen and accepted Snelling's brief. (Doc. 11–1, at 37). On June 22, 2011, the Ohio Court of Appeals affirmed the trial court's judgment. *Snelling*, 2011 WL 2565606, at *1. Snelling did not file an appeal with the Supreme Court of Ohio.

On July 13, 2011, Snelling filed a timely *pro se* application to reopen his appeal with the Ohio Court of Appeals pursuant to Ohio App. R. 26(B). (Doc. 11–1, at 76).  Snelling asserted that his appellate counsel was ineffective because counsel ignored Snelling's request to raise two issues in his brief. Snelling claimed his sentence and conviction were contrary to the evidence. (Doc. 11–1, at 90). On August 5, 2011, the court of appeals overruled Snelling's Rule 26(B) application. (Doc. 11–1, at 90). Snelling did not appeal this decision to the Supreme Court of Ohio.

On October 11, 2011, Snelling filed a *pro se* petition with the trial court to vacate or set aside his judgment of conviction or sentence. Snelling argued there was insufficient evidence to support his conviction and his trial counsel was ineffective. (Doc. 11–1, at 93). On December 8, 2011, the trial court denied the petition as untimely and barred by the doctrine of res judicata. (Doc. 11–1, at 107). On December 14, 2011, Snelling filed a motion to amend the petition. However, the trial court

4

never ruled on the motion. (Doc. 11–1, at 110).

On December 21, 2011, Snelling filed a notice of appeal (Doc. 11–1, at 114) and motion for leave to file a delayed appeal (Doc. 11–1, at 116) with the Supreme Court of Ohio. On February 1, 2012, the court denied the motion and dismissed the case. (Doc. 11–1, at 134).

On April 9, 2012, Snelling, filed a *pro se* motion with the trial court for sentencing pursuant to Ohio Rev. Code § 2943.032. Snelling alleged the judgment entry of conviction was void "for a variety of statutory and constitutional reasons." (Doc. 11–1, at 135). The trial court construed the motion as a successive petition for post-conviction relief. The court denied the motion on August 9, 2012, finding the motion was barred by res judicata and did not satisfy the requirements of § 2943.032. (Doc. 11–1, at 149). Snelling timely appealed the denial of his motion to resentence (Doc. 11–1, at 153), and the Ohio Court of Appeals affirmed the trial court's judgment on June 21, 2013 (Doc. 11–1, at 190).

While his appeal of the denial of his motion to resentence was pending, Snelling filed a second petition to vacate or set aside judgment of conviction or sentence on May 20, 2013. (Doc. 11–1, at 195). On February 24, 2014, the trial court denied the petition as successive and untimely. (Doc. 11–2, at 65).

Snelling appealed the denial of his second post-conviction petition. (Doc. 11–2, at 72). On October 6, 2014, the Ohio Court of Appeals affirmed the trial court's judgment. (Doc. 11–2, at 172). Snelling filed a timely appeal with the Supreme Court of Ohio. (Doc. 11–2, at 184, 197). On April 8, 2015, the Supreme Court of Ohio declined to accept jurisdiction over the case and dismissed the appeal. (Doc. 11–2, at 237)

Snelling filed his federal habeas corpus petition with this Court on January 22, 2016. *See*

*Houston v. Lack*, 487 U.S. 266, 270 (1988); (Doc. 1, at 14). In his petition, Snelling raises the following grounds for relief:

> GROUND ONE: The trial court abused its discretion and failed to respond to the defendant's motion for summary judgment, the defendant's motion for summary judgment the defendant did maintain that the trial court did violate petitioner's constitutional rights and Ohio constitutional rights.
>
> GROUND TWO: Trial counsel was ineffective assistance of trial counsel. The defendant's attorney failed to call his witness to trial that would of changed the outcome of trial, thus denying the defendant a fair trial and due process of law and equal protection and effective assistance of trial counsel pursuant to the Fifth, Sixth and Fourteenth Amendment to the United States Constitution and Ohio Constitution and sections 10 and 16.
>
> GROUND THREE: The trial court erred to the prejudice pursuant to the clear language of O.R.C. § 2945.75. A verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense.
>
> GROUND FOUR: An unsworn complaint is void and any resulting conviction would also be void.

(Doc. 1, at 16–20).

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court cannot grant a habeas corpus petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Under the contrary to clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of

6

materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the unreasonable application clause, a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the petitioner's case. *Id*. at 413. To obtain habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

To analyze whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, courts look only to the holdings of the Supreme Court's decisions as of the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). The state court's factual findings are presumed correct unless rebutted by the habeas corpus petitioner by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004).

## DISCUSSION

The AEDPA provides a one-year statute of limitations for a writ of habeas corpus by a person in custody pursuant to a judgment of a state court. 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," when it has been timely asserted by the warden, as it has been in this case, it "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009).

Snelling argues his habeas corpus petition is not barred by the applicable statute of

limitations. (Doc. 18, at 2). Snelling states he filed a successive motion for post-conviction relief on May 20, 2013. On February 24, 2014, the trial court denied the motion "as successive and untimely." (Doc. 18, at 2). He filed a timely appeal with the Ohio Court of Appeals which affirmed the trial court's judgment on October 6, 2014. He then filed a timely appeal with the Supreme Court of Ohio which declined jurisdiction over the case on April 8, 2015. Snelling asserts the statute of limitations began to run on April 8, 2015, and would have ended on April 8, 2016, making his habeas corpus petition of January 14, 2016, timely filed. (Doc. 18, at 2). Snelling's argument is wrong.

Snelling's petition is deemed filed with this Court on January 22, 2016, the day Snelling certified he placed his petition in the prison mail system. *See Houston*, 487 U.S. at 270; (Doc. 1, at 14). Therefore, Snelling's assertion that the date he signed the petition, January 14, 2016, is the date he filed his petition with this Court is incorrect. *See Houston*, 487 U.S. at 270.

Further, Snelling's post-conviction relief motion of May 20, 2013, did not toll or renew the one-year statute of limitations of § 2244(d)(1). Snelling's motions for post-conviction relief filed on October 11, 2011, and May 20, 2013, along with his § 2943.032 request of April 9, 2012, are not considered properly filed within the meaning of § 2244(d)(2). An application for post-conviction or other collateral review is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, e.g., requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery. *Artuz v. Bennett*, 531 U.S. 4, 8–9 (2000); *see also Thomas v. Meko*, 828 F.3d 435, 438–39 (6th Cir. 2016).

The trial court held that these motions for post-conviction relief were not timely filed as a matter of Ohio law. These determinations were affirmed on appeal. Principles of comity require federal courts to defer to a state's judgment on issues of state law and, more particularly, on issues

8

of state procedural law. *Engle v. Isaac*, 456 U.S. 107, 128–29 (1982); *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001). Because state courts are the final authority on state law, *see Hutchison v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), federal courts must accept a state court's interpretation of its statutes and its rules of practice. *Israfil*, 276 F.3d at 771–72; *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). This Court must defer to the state court's findings as to whether Snelling's post-conviction motions were submitted according to Ohio's timeliness requirements. *Israfil*, 276 F.3d at 771–72. Because the state courts of Ohio found Snelling post-conviction motions to be untimely, the one-year statute of limitations of § 2254(d)(1) began to run on September 20, 2011, the day after Snelling could have sought leave to appeal the denial of his Rule 26(B) motion with the Supreme Court of Ohio.  28 U.S.C. § 2244(d)(1)(A); Ohio S.Ct. Prac. R. II, § 2(A)(1)(a) (notice of appeal to the Supreme Court of Ohio must be filed within 45 days of the entry of judgment); *see also Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000); *Williams v. Wilson*, 149 F. App'x 342, 345 (6th Cir. 2005) (one-year period begins to run on expiration of the forty-five day period under which review could have been sought by Supreme Court of Ohio).

Further, Snelling has not attempted to show, nor is it evident from the record, that he is entitled to equitable tolling which would have stopped the running of the statute of limitations. "Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396,  401 (6th Cir. 2004). "Federal courts have typically extended equitable relief only sparingly." *Griffin v. Rogers*, 399 F.3d 626, 635 (6th Cir. 2005). When deciding whether equitable tolling should apply, courts evaluate the following factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's

rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Id.* "These five factors 'are not comprehensive, nor is each of the five factors relevant in all cases.'"

*Id.* "Instead, courts must consider equitable tolling on a 'case-by-case basis.'" *Id.*

Snelling has the burden of establishing his entitlement to equitable tolling. *See Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003). In order to meet this burden, Snelling has to show that extraordinary circumstances prevented the filing of his petition, and that he was diligent in pursuing his case. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Snelling has not met this burden. Snelling was prolific in filing motions with the state courts of Ohio. This conduct shows Snelling is very capable of litigating his case. Further, Snelling has not shown that extraordinary circumstances prevented him from filing a timely habeas corpus petition with this Court. Therefore, Snelling is not entitled to equitable tolling.

## CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned recommends Respondent's motion to dismiss be granted.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time *WAIVES* the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).